# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 18, 2011

## HAWEYA-SURER DAHIR v. ABDULRAHIM MUHAMMED ABSHIR

**Appeal from the Chancery Court for Rutherford County**
**No. 09-0109DR     J. Mark Rogers, Chancellor**

---

**No. M2010-00594-COA-R3-CV - Filed July 18, 2011**

---

Former wife appeals the dismissal of an order of protection she had secured against her husband; the failure of trial court to hear her petition for annulment of the marriage; and the failure of trial court to state specifically the facts upon which the court's finding of husband's improper marital conduct was based. Finding no error, we affirm the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Kerry Knox and Thomas H. Castelli, Murfreesboro, Tennessee, for the appellant, Haweya-Surer Dahir.

Brad W. Hornsby and Caleb B. McCain, Murfreesboro, Tennessee, for the appellee, Abdulrahim Muhammed Abshir.

## OPINION

The parties to this case were married in Saudi Arabia on January 5, 2006; they are the parents of one child, born June 7, 2008. At the time of their wedding, Wife was a citizen of the United States and Husband a citizen of Somalia. Following the wedding, Wife returned to the United States and began the process of getting Husband admitted to the United States in order to become a United States citizen. In connection with her efforts, she executed an Affidavit of Support indicating that she was a sponsor of Husband and in which she agreed to be financially responsible for the repayment of any public benefits received by him.

On January 20, 2009 Wife secured an *ex parte* order of protection against Husband and on January 26 instituted a divorce action, alleging irreconcilable differences and Husband's inappropriate marital conduct as grounds. Husband duly filed an answer and counter-complaint, also alleging irreconcilable differences and Wife's inappropriate marital conduct as grounds. Various motions were thereafter filed by the parties, as a result of which an Agreed Order was entered on August 3, 2009; the order provided, *inter alia*, that the *ex parte* order of protection was continued indefinitely and that the parties were both enjoined "from harassing, threatening, assaulting or abusing the other."[1]

On January 4, 2010, Husband filed a motion seeking sanctions against Wife arising from difficulties encountered in exchanging the child for purposes of the exercise of residential parenting time and for her failure to appear and give her deposition on January 4. The court held a hearing on the motion for sanctions and entered an order on February 19 which, in pertinent part, dissolved the *ex parte* order of protection. As part of the order, the court prohibited Husband from going to the City of LaVergne, where Wife was living, and onto the campus of Middle Tennessee State University, where she attended school. On February 22, the court entered a scheduling order that set a mediation for February 24 and the final hearing for March 16.

On March 5 Wife filed a Petition to Set Aside Marriage Contract and for Annulment and a motion to stay the proceedings pending her appeal of the February 10 judgment.[2] The case proceeded to a hearing on March 16. Prior to taking testimony at the hearing, the court denied Wife's motion for stay and oral motion for an interlocutory appeal of the court's dismissal of the order of protection. Following the hearing, the court entered an order on April 9 granting Wife a divorce on the grounds of inappropriate marital conduct; the order approved the parenting plan submitted by the parties and the agreement reached at the mediation.

Mother appeals, raising the following issues:

     1. Whether the trial court erred by dismissing Plaintiff's Order of Protection on Defendant's Motion under Tenn. R. Civ. P. 37 for discovery sanctions.
     2. Whether the trial court erred by refusing to hear Plaintiff's petition for an annulment of marriage.

---

[1] A separate order was entered on July 19 which provided that "The Ex Parte Order of Protection shall remain in effect pending further orders of this Honorable Court."

[2] The record does not reflect an order entered February 10.

3. Whether the trial court erred by failing to set forth specific findings of facts on the improper marital conduct after requested to do so by the Plaintiff.

**Discussion**

*Dismissal of the Order of Protection*

Wife contends that the trial court erred by dismissing the Order of Protection "on a Rule 37 Motion" and that the court's action "deprived Plaintiff of a full and fair opportunity to present evidence of abuse, which may have justified converting the *ex parte* order into a temporary or permanent Order of Protection." We review the trial court's action in this regard using the abuse of discretion standard, under which we defer to the discretion of the trial court unless the court has miscontstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence. *Langlois v. Energy Automation Systems, Inc., et. al.*, 332 S.W.3d 353 (Tenn. Ct. App. 2009) (*perm. app. den.* June 18, 2010).

Father's motion was styled "Motion for Sanctions" and sought, among other things, dismissal of the order of protection; that Father be granted a divorce, with remaining matters reserved until final hearing; additional residential parenting time to make up for time lost; and the entry of an order scheduling depositions, mediation and setting the trial. As grounds for the requested relief, the motion recounted Wife's failure on two occasions to exchange the child or to notify either Husband or personnel at the agency where the exchange was to take place that she would not appear for the exchange; Husband also asserted that Wife had failed to appear for a deposition on January 4, which had been reset from December 7 at the request of Mother's counsel. The motion further advised that Husband faced a possible deportation action due to the issuance of the order of protection, asserted that the protection order was obtained "for the sole purpose of getting Father deported outside of the United States and 'thereby winning' custody of the parties' minor child," and alleged that Wife was intentionally delaying the final hearing. The record does not reflect that Wife filed a response to the motion.

At the hearing on the motion on February 5, 2010, prior to taking proof, the court allowed counsel for both parties to be heard relative to the issues raised in the motion; while counsel for Wife characterizes the discussion as "spirited" in her brief, our review of the transcript reveals that characterization to be an understatement. Counsel for both parties were vigorous in advocacy, and the court gave each counsel full rein to be heard. The court determined that the failure of Wife to attend the deposition was due to a miscommunication which resulted in the scheduling of the deposition for a time at which Wife's counsel had

-3-

another matter scheduled;[3] the court also determined that it needed to set deadlines for the parties to complete discovery and mediation, and to set the case for trial. Further, the court attempted to discuss with counsel Husband's request, in light of the potential deportation proceeding, that either the order of protection be dismissed or that the divorce be granted without regard to fault; in the course of this discussion Wife's counsel stated that he and Wife had "gotten information, reason to believe that this would probably be an appropriate case to annul based upon fraud" and she was "probably going to file some sort of pleading" in that regard.

Wife's contentions with specific respect to the sanctions sought by Husband were, first, that the motion did not comply with Local Rule 7.01, which requires that the motion cite the rule upon which the motion is grounded and, second, that a sanction was not appropriate under the circumstances. The court held that, notwithstanding the fact that the motion did not specifically cite Tenn. R. Civ. P. 37.04 as the basis for the relief sought, Wife was clearly put on notice of the relief requested and the grounds therefor; the court excused the failure to cite the rule in accordance with Local Rule 1.01, allowing the court to suspend or vary a local rule when justice requires. We find no abuse of discretion in proceeding to hear the motion.

We likewise find no abuse of discretion in the court's dismissal of the order of protection. Tenn. R. Civ P. 37.04 allows the court to "make such orders in regard to the failure [to appear at the deposition] as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of Rule 37.02." Tenn. R. Civ. P. 37.02(C) expressly allows the court to dismiss "the action or proceeding or any part thereof." Moreover, in lieu of the order of protection, the court entered an order restraining both parties from "harassing, assaulting, threatening, abusing, coming about or making disparaging comments about the other" and specifically prohibited Husband from going to the City of LaVergne and from entering the campus of Middle Tennessee State University; in making this provision the court noted that "the mutual restraining order set forth above will prohibit Husband from exercising his visitation pending the final hearing, but the court finds that this resolution is just." Being aware of the history of the case as well as the circumstances of the parties and having guided the parties to setting dates for their depositions, mediation and trial, the court did not err in its disposition of the order of protection.

_____

[3] On December 11, 2009, Husband's counsel prepared and sent a Notice of Deposition to Wife's counsel, setting the deposition for January 4, 2010, one of the available dates his assistant had been given by Wife's counsel's assistant. Wife's counsel acknowledged that "there's no doubt that my office gave Mr. Hornsby January the 4th as a date" but asserted that the conflict was brought to the attention of counsel when the notice was received; as noted by the court, Wife's counsel did not file a motion to quash the notice.

*Petition for Annulment*

Wife contends that the trial court erred in not considering her request for an annulment of the marriage. This contention is without merit.

Initially, we note that Wife's statement in her brief that the trial court "refused to hear the annulment issue citing that Plaintiff's counsel had failed to move to amend his complaint and properly put the matter before the Court" is not supported by the transcript of the hearing. At the beginning of the trial, Wife's counsel advised the court:

> So, Judge, we are asking today for you to find these parties - to either annul the marriage based upon fraud. If you're not inclined to annul the marriage, then find fraud within the inappropriate marital conduct, because we think that's clear. If you find those things, then my client has no obligation to him from a financial standpoint.
> And that's essentially what we want from Your Honor.

In further defining the issues for trial, the court and counsel for both parties had the following exchange:

> Now, I don't want to compound anyone's difficulties and I don't want to do anything that's not correct. I want to be - I want to address things. What I see I have before me is a divorce proceeding. I don't have anything else. And I don't have in the complaint for divorce anyone filing saying, we're seeking - I've got a divorce on the grounds of irreconcilable differences, which is not going to happen unless you agree on all the terms. So, we all agree on that, I think. I won't say we agree on anything. That's what I conclude, you won't get a divorce on irreconcilable differences. And I have the Mother's request for a divorce on fault grounds, inappropriate marital conduct. And I have the Father or Husband with a counter-complaint seeking a divorce on irreconcilable differences, which will not happen without an agreement, or inappropriate marital conduct, or abandonment. That's what I have before me.
> I do not have a proceeding seeking - I don't have before me the issue of annulment or fraud or any such matter, unless I'm missing something. I do not want to create an appellate nightmare. But I'm letting you both know, unless I'm missing something, that's where I think I am. And so, I see Mr. Hornsby nodding, so - do I need to ask anything else, or do I need to just say, call your first witness, because you folks have gotten me -

MR. HORNSBY: Well, Your Honor, I don't know that we're going to have proof on then. Because the issue is -

THE COURT: I'm not making a ruling; I'm making an inquiry.

MR. HORNSBY: The annulment is not before the Court. We're agreeing that she can get the divorce on inappropriate marital conduct.

THE COURT: So, Mr. Hornsby, you tell me that what I just stated that's before me is her action for divorce on irreconcilable differences or -

MR. HORNSBY: Yes, sir.

THE COURT: - inappropriate marital conduct -

MR. HORNSBY: Yes, sir.

THE COURT: - and she can't get a divorce on irreconcilable because we don't have, you don't have, the parties don't have a marital dissolution agreement?

MR. HORNSBY: Yes, sir

THE COURT: So, that gets it down to whether or not she's granted a divorce on inappropriate marital conduct?

MR. HORNSBY: But we do have an agreement -

THE COURT: Hold on.

MR. HORNSBY: Yes, sir.

THE COURT: And then secondly, you have your action for divorce, unless you stand up and say you dismiss it, depending on where they go with their action -

MR. HORNSBY: Yes, sir.

THE COURT: - is that right?

MR. HORNSBY: If they accept it, we'll dismiss ours -

THE COURT: But that's where I am?

MR. HORNSBY: Yes, sir.

THE COURT: Now, Mr. McCarter, do you think there is anything else before me?

MR. McCARTER: We filed under the grounds of inappropriate marital conduct, which could be anything.

THE COURT: Okay.

MR. McCARTER: So, I want to be able to put proof on as to what the inappropriate marital conduct is -

THE COURT: Okay.

MR. McCARTER: - and you make a specific finding one way or another, whether we have proven that or not.

THE COURT: Okay.

MR. McCARTER: And that's what I'm asking for. I don't know that I have to plead fraud. I would agree with you that the annulment, I didn't

probably follow the right procedure to get that filed. And I'll agree with you, it's not properly before the Court today.

THE COURT: Okay.

MR. McCARTER: But what I would ask the Court -

THE COURT: I just don't want to have something before me and make a mistake.

MR. McCARTER: Absolutely. None of us want to make mistakes, so -

THE COURT: So, you agree you're here on inappropriate marital conduct?

MR. McCARTER: Absolutely.

THE COURT: So, I'm ready to hear the proof then on the issue of inappropriate marital conduct. You're willing to stipulate they're entitled to a divorce on the grounds of inappropriate marital conduct?

MR. HORNSBY: Yes, sir.

THE COURT: Okay. With that in mind then, Mr. McCarter, you can put on whatever proof you feel like you need - I mean, I don't know what I'm supposed to do with your proof, but I'll hear whatever you want to put on.

MR. McCARTER: I'm asking the Court for a specific finding so she doesn't have to support this man. And in order to do that, I've to have a finding of fraud within that inappropriate marital conduct.

The record clearly shows that Wife did not insist on proceeding with the annulment or object to the court's holding that annulment was not properly before it and would not be considered.

As noted above, Wife's counsel had advised the court at the February 5, 2010 hearing that she was "probably going to file some sort of pleading" seeking an annulment on the ground of fraud. Eleven days prior to trial Wife filed a document styled "Petition to Set Aside a Marriage Contract and For Annulment"; as acknowledged by her counsel, this was not an appropriate pleading and the matter of annulment was not before the court at trial. The court did not err in not considering a matter that was not properly before it.

*Specific Findings of Inappropriate Marital Conduct*

Citing a request she made prior to trial, Wife next contends that the court erred in failing to make specific findings of Husband's inappropriate marital conduct. At the trial, even though Husband admitted his guilt of inappropriate marital conduct and stipulated that Wife should be granted a divorce on that ground, at Wife's insistence the court allowed her to put on proof of Husband's conduct. In the order entered after the trial, the court made specific findings and granted Wife the divorce on the grounds of inappropriate marital

conduct on the part of Husband.[4]  Wife failed to file a post-trial motion as authorized by Tenn. R. Civ. P. 52.02 seeking to bring any deficiency in the findings to the court's attention or to request further findings.  Further, her brief on appeal fails to acknowledge these specific findings or explain the manner in which she asserts they are inadequate; she does not argue that the proof does not support the findings or cite to other proof ignored by the court.  We fail to find any impediment with the court's findings and the award of the divorce on the grounds of inappropriate marital conduct in accordance with those findings.

*Conclusion*

Finding no error, we affirm the judgment of the trial court.

_____

RICHARD H. DINKINS, JUDGE

---

[4] The court found: "That there are ample grounds for finding inappropriate marital conduct, as after the birth of the child, the Husband did not take care of the child to the extent that the Wife felt like he should. The Wife had to take the child with her to school and class, and she was disappointed with the lack of Husband's work, although Husband felt that he was doing all he could as he was going to Vanderbilt and was in a very highly competitive program that was very demanding. During this period of time, there were verbal disputes and arguments which were not appropriate, although, there did not appear to be any physical violence."